(113)   CITY OF ST. LOUIS v. SMITH.

1. The fine of $100 imposed by an ordinance of the corpora·ion of St. Louis, upon persons keeping tippling houses and retailing wines, &c., without license, has, by a subsequent ordinance, been reduced to $90, and Justices of the Peace have jurisdiction.

2. The corporation has the power, by its charter, of imposing a fine upon persons keeping tippling houses and retailing wines, &c , without having first obtained license from the corporation.

ERROR from St. Louis Circuit Court.

M'GIRK, C. J., delivered the opinion of the Court.

This was an action of debt for one hundred dollars, brought before a Justice of the Peace for a penalty. The Justice gave judgment against the corporation, whence the cause was removed to the Circuit Court, where judgment was again given against the corporation.

The points on which the Circuit Court went, were:

First. That a Justice of the Peace, under the law of the land, had not jurisdiction of the sum of $100.

Second. That the corporation had not power by their charter to create the offence out of which this penalty grew.

The record shows that the suit was commenced under the provisions of an act or ordinance of the city, entitled "An ordinance to reduce into one the several ordinances for levying and collecting taxes in the city of St. Louis," which imposes a fine of $100 upon persons for retailing wines and spirituous liquors in less quantities than one quart or bottle, to be drank in the house, without a license to keep a tippling house first obtained from the city.

The bill of exceptions shows that Smith did so retail without the license required.

Several ordinances and the charter are upon record, which will be noticed as occasion may require.

A subsequent ordinance to the one on which the suit was brought, declares that from and after the passage thereof, all ordinances and parts of ordinances fixing a penalty for the transgression of the same, a specific sum not within the jurisdiction of a Justice of the Peace, be and the same are hereby repealed. Section second says that all specific sums fixed as a fine and forfeiture as aforesaid, be reduced to the (114) sum of ninety dollars, and to be recovered by action of debt, founded on this ordinance, before any tribunal having jurisdiction thereof: page 30 of the ordinance book.

I understand that the first section of this last act is predicated on the idea that there may be some specific penalties above the jurisdiction of their own Justices, (for I think they must be intended to refer to those Justices only over which they had power,) which may be, and I think is, a mistaken idea. At all events the act on which this suit is brought is not one of that description, for by the charter the Jus-

tices may have jurisdiction to any amount. By the amended charter, section 9, it is declared that Justices of the Peace within the city shall have jurisdiction of all cases arising under the first act of incorporation under the amended act, and under the ordinances. And I see nothing in the ordinances which expressly defines their jurisdiction.

But it is most clear that this penalty is reduced to $90, by the second section of the 5th March, 1827. But I think that this, by the ordinance of 24th January, 1829, is cured. This ordinance gives great latitude in matters of this kind, and declares that all that is necessary is, that the defendant should be informed of the nature of the charge against him. In this case the defendant is expressly told by the summons, that he is to answer for the offence of keeping a tippling house without a license, contrary to the act, reciting it. This, I think, is enough to let him know what to defend against in the case.

The next and most material point is, whether the corporation had power to pass the ordinance licensing tippling houses, and fixing a penalty for those who should keep them without such license. To know what powers are granted, it will be necessary to look to the charter; and so much of that charter as I deem material, I will quote. The 12th section declares that the Mayor and Board of Aldermen shall have power to lay taxes, &c.; to make regulations to prevent the introduction of contagious diseases; to make quarantine laws; to prevent and remove nuisances; to provide for licensing, taxing and regulating auctions, retailers, ordinaries, taverns, billiard tables, &c.

Then it says, to restrain and prohibit tippling houses, gaming houses, bawdy houses, and other disorderly houses, &c.

It may be remarked here, that the act respecting taverns authorizes the County Court to license dram shops, and it is insisted that dram shops and tippling houses (115) are synonymous. I think they are, so far as respects the meaning of the charter.

The question which is made on this part of the subject, arises on the words to restrain and prohibit tippling houses. It is contended on the part of Smith, that to license and fix a penalty for keeping such house without license, is not to restrain but to encourage and create.

I understand the construction of this part of the charter to be this: That the Legislature understood that tippling houses, &c., already existed, and that they intended to give the corporation, by the words restrain and prohibit, two powers. One was to prohibit their existence altogether, if they thought it best to do so, and the other was to keep them within certain limits as to the number and order, as they should think best.

But as to the tippling houses, bawdy houses, and gaming houses, whether the corporation could legally license them if they chose to do so, instead of prohibiting them, I think depends upon the fact, whether by the law of the land they were permitted to exist.

Now as to the bawdy houses, they could not be authorized by the corporation law to exist, because it is contrary to common law that they should exist. The corporation might suppress them if they existed against the general law, but if it did not choose to do so, then it might restrain them within such limits as it might see fit. But as to the tippling house, by law it may exist. The County Court may grant it a

City of St. Louis *v.* Smith.

license, and I cannot see how the corporation could well prohibit their existence if the County Court should license them.

Then as to the tippling houses licensed by the County Court, the corporation may restrain, and where not authorized by the County Court, may suppress and prohibit altogether.

The question then arises, what is meant by restrain? I understand that any impediment thrown in the way of an unlimited exercise of a power, is a restraint; the restraint may be so great that it amounts almost or entirely to an exclusion to the exercise of the power. Yet it may be less, so much so that the restraint is scarcely perceptible. To require a license on the payment of fifty dollars, or to pay a fine of one hundred for neglect of this license, is a restraint. It may be a sufficient one, and if not, the corporation may provide other restraints.

(116) Upon the whole matter, I am of opinion the judgment of the Circuit Court is erroneous. It is reversed and sent back for a new trial.


Tompkins, J., dissenting.

I contend that the act of Assembly, giving the corporation power to restrain and prohibit tippling houses, &c., does not authorize it to license such houses. To restrain, in my opinion, means to restrict within certain bounds, viz: to prescribe the hours within which their doors may be kept open; to make regulations to prevent, more effectually, all disorderly practices peculiar to the habits of persons frequenting such places in a city, &c. &c. In the rest of the opinion I concur.